UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION
CIVIL ACTION NO. 06-CV-00061-HRW

FASTENAL COMPANY,                                          PLAINTIFF

VS.

GREG CRAWFORD, ET AL.                                      DEFENDANTS

**DEFENDANTS GREG CRAWFORD, TODD ROBINSON, ERIC MILLER,
AND TRISTATE INDUSTRIAL SUPPLY'S REPLY TO PLAINTIFFS
RESPONSE FOR MOTION FOR JUDGMENT AS A MATTER OF LAW,
FOR JUDGMENT NOT WITHSTANDING THE VERDICT,
FOR A NEW TRIAL AND/OR REMITTITUR**

Comes now Defendants Greg Crawford, Todd Robinson, Eric Miller, and Tristate

Industrial Supply, Inc., by and through counsel, and for their Reply to Plaintiffs'

Response state as follows:

**A.  Breach of Settlement Agreement**

The Defendants herein as previously set out in their Motion for Judgment

as a Matter of Law, Judgment Not Withstanding the Verdict, a New Trial, and/or

Remittitur, rely upon the statements made in the original brief,  i.e. plaintiff presented no

evidence to support its claim for breach of settlement agreement.  Plaintiff presented no

evidence for which the jury could rely on to believe that there was a settlement

agreement.

Plaintiff contended that there was an oral agreement reached between Greg

Crawford and Ross Surratt on Friday, January 6, 2006.  Plaintiff would allege that there

was a conversation on that night wherein Greg Crawford; on behalf of himself, on behalf

of Todd Robinson, on behalf of Eric Miller, and on behalf of Tristate Industrial Supply,

made an agreement with no specific terms.  The alleged agreement was supposedly that

the defendants would abide by an indefinite non-compete with no jurisdictional limits and no other specific terms. It is also alleged that he agreed to return items that were not in his ownership at the time.

The plaintiff relied upon the fact that a document was admitted into evidence that Rob Chase, the district manager for plaintiff in 2006, testified had been drafted by third parties, and contained language of a non-compete agreement. Mr. Chase stated that this document was waiting for the defendants on Monday, January 9, 2006 at 8:00 a.m. at the Ashland Fastenal branch for them to review. (Rob Chase TR p.175, line 5 – 11)

The evidence and testimony presented clearly set forth that this document was never presented to the defendants. The document did not memorialize the alleged agreement on Friday, January 6, 2006. (Greg Crawford TR p.11, line 16 – p.12, line 7) The terms set out in this document were not even the same as what was testified to by Ross Surratt as the alleged agreement. (Rob Chase TR p.175, line 5 - 11) Further, the Court admitted this document not for the purpose of showing that any agreement existed, but only for the purpose of supporting testimony of Rob Chase that a document had been prepared in anticipation of a meeting with three of the defendants on Monday morning. (Rob Chase TR p.175, line 12 – 23; Ross Surratt TR p.63, line 1 – 24)

As was set out in detail in defendants' original brief, there was no agreement entered into on Friday, January 6, 2006. There was a telephone conversation between Ross Surratt and Greg Crawford. Ross Surratt admitted in his testimony that he never spoke with Eric Miller. He never spoke with Todd Robinson. (Ross Surratt TR p.39, line 8 – 10) He never spoke with anyone on behalf of Tristate Industrial Supply. Further,

Ross Surratt admitted that no one told him, nor was it even discussed, that Greg Crawford had any authority to bind any of these other defendants if such agreement had been made.

Greg Crawford testified that there was no agreement other than that any items Greg Crawford had in his possession would be returned and that he would seek to help to get the other items returned to them. Greg Crawford testified that he and Ross Surratt agreed to speak again on Monday morning regarding the issues that were being complained of on Friday evening. There were no specific terms of any agreement set out, there were no documents written on Friday evening. There were no memorandums written on Friday evening to memorialize an alleged agreement.

The evidence and testimony further clearly stated that on Saturday, January 7, 2006, Rob Chase contacted Todd Robinson in an attempt to see if he would agree to the items that Ross Surratt was demanding of Greg Crawford the previous Friday evening. (Todd Robinson TR p.18, line13 – p.19, line 8; Rob Chase TR p. 140, line 16 – 24)) It was testified by Ross Surratt, as well as Greg Crawford, that Ross Surratt was making certain demands on the previous Friday evening, but there was no evidence or testimony that these demands were agreed. (Greg Crawford TR p.110, line 4 – p.111, line 25)

The plaintiff relies upon the 6th Circuit case of Arnold Palmer Golf Company v. Fuqua Industries, Inc., 541 F 2d 584(6th Circuit 1976), for their contention that parties can bind themselves orally or by informal letters or telegram if they like, to an agreement or contract. The Arnold Palmer case clearly sets out that "it was a question to be determined after the entry of the evidence and the testimony presented as to whether or not parties intended to bind themselves to an agreement". This Court had the opportunity to hear the testimony and review the evidence that was presented. The testimony and

evidence established that there was never an agreement reached.  There was never an intention of the parties' to bind themselves to any demands of Ross Surratt.

The plaintiff further relies upon <u>Quadrille Business Systems v. Kentucky Cattlemen's Association, Inc.</u> 242 S.W.3d 359,(Ky App. 2007), wherein they state that the Court held an agreement "must contain definite and certain terms setting forth promises of performance to be rendered by each party" .   As is clear by the testimony and evidence in our case at bar, there were no definite terms and promises of performance rendered by any of the parties.

The written document that was placed into evidence, in which the plaintiff  is urging this Court to find was a binding agreement, was not a document that was ever presented to the defendants.  Defendants clearly testified that the first time they saw this document was during the discovery process of this case and that testimony was uncontroverted.  (<u>Greg Crawford TR p.11, line 16 – p.12, line 7</u>)  The evidence was also uncontroverted that this document did not contain the terms of any demand that was set out Friday, January 6, 2006.  (<u>Rob Chase TR p.175, line 5 – 11</u>)  As plaintiff's own witness testified, his demand to the defendants was for an indefinite non-compete.  (<u>Ross Surratt TR p.116, line 4 – p.120, line 14; Rob Chase TR p.175, line 5 – 7</u>)  There were no discussions or demands or agreements regarding time frames of a non-compete, jurisdictional limitations of the non-compete, or any of the other specific terms that need to be set out in an agreement for such an agreement to be found binding.  It is obvious there was never an intention by these defendants to be bound by any such agreement nor would any such agreement be upheld as a legal and binding contract.

Further, the <u>Arnold Palmer case</u> as relied upon by the plaintiff can be clearly distinguished from the facts and issue at hand. In the <u>Arnold Palmer case</u> the parties actually sat down in a formal meeting and memorialized their agreement with a memorandum of intent. Further, the parties issued a press release setting forth their intent to agree and what the agreement was to contain. The only issue therein, was that the final formal document setting forth the terms of the agreement had not been prepared prior to one of the parties deciding it no longer wanted to be a part of the agreement.

This is completely contrary and different to the facts of the case at hand. In the facts in our case at hand, there was no written formal document setting out specific terms and conditions or promises of performance by any party. There were no discussions between all of the parties', there was merely a telephone conversation between one of the defendants and Ross Surratt.

Plaintiff would lead one to believe that they dropped criminal charges and that they "gave up their right to pursue criminal charges" in reliance upon the conversation that was held on Friday, January 6, 2006. However, as this Court is well aware, the statute of limitations for criminal charges of theft is longer than three days. Further, it was the testimony of at least two of the witnesses that took the stand, which was uncontroverted by the plaintiff, that one of the defendants was allowed to leave the premises and the other defendant was told by officers, (while Ross Surratt and Greg Crawford were still on the phone having their conversation), that there were no criminal charges and that this was a civil action. (<u>Todd Robinson TR p.18, line 13 - 19; Greg Crawford TR p.110, line 16 – 20; Rob chase TR p. 140, line 1 – 7; Ross Surratt TR p.39, line 1 – 4; Eric Miller TR p.4, line 8 - 13</u>) Clearly, there were no criminal charges being

brought by the police officers at the time of the conversation on the telephone.  Further, as set out in the letter of counsel to Fastenal, Inc., which was relied upon by plaintiff, the continued threat of criminal charges was a mere attempt to coerce these defendants into an agreement.

Finally, plaintiff's counsel continues to misread and mislead the Court with regard to this letter that was placed into evidence.  Even after the Judge of this case informed plaintiff's counsel that he also did not read the letter to state what she contended, counsel continued to argue to the jury her misguided reading. Counsel continued to leave out the word "attempted" in the letter.  Counsel for plaintiff continued to state that the letter to plaintiff on January 9, 2006, ( plaintiff's exhibit 5), accuses plaintiff of coercing counsel's clients into "indefinite non-compete agreements".  However, a clear reading of the letter shows that the letter actually states, that plaintiff ***attempted*** to coerce her clients into indefinite non-compete agreements.

This attempt at coercion was clear by Ross Surratt's demeanor and his agreement on the stand that he "raised his voice" and demanded the defendants sign indefinite non-compete contracts. (Ross Surratt TR p.38, line 8 – 12; Greg Crawford TR p.112, line 7 – line 24)  Further evidence, was the testimony of Rob Chase, witness for the plaintiff, wherein he stated that the very next day he called another defendant, Todd Robinson, to see if he would agree to the demands that were set out by Ross Surratt on Friday evening. (Rob Chase TR p.140, line 19 – p.142, line 7)  He made this call at the insistence of Ross Surratt.  (Rob Chase TR p.140, line 25 – p.141, line 1)

The evidence was clear that there was no settlement agreement.  The evidence is clear that there was no meeting of the minds.  The evidence is clear that there were no

specific terms and conditions being set out for an agreement.  The evidence is clear that

there was no memorialization by any of the parties of the actual demands that were made

on Friday evening and that the written document plaintiff relies upon was never presented

to the defendants for their consideration or agreement.  The evidence is clear that there

was no settlement agreement for which there could have been a breach, therefore,

defendants are entitled to Judgment as a Matter of Law on this issue.

### B.  Breach of Fiduciary Duty

Plaintiff relied upon the case of In Re Salle v. Fall,286 F.3rd 878(6th

Circuit 2002), for its contention that "a fiduciary relationship created the highest order of

duty imposed by law.  If a fiduciary relationship exists, the fiduciary cannot profit from

the relationship without the knowledge or permission of the principal."  Plaintiff alleges

that in this action, the defendants herein profited from their "inside positions" at Fastenal,

Inc..  However, plaintiff presented no evidence that the defendants Greg Crawford, Todd

Robinson, Eric Miller, or Tristate Industrial Supply, in any way profited from any

knowledge alleged to have been gained from their relationship with Fastenal, Inc..

The plaintiff states that the positions of these defendants' with Fastenal allowed

them to " place the order, price the product, release the product without the signature of

the person who picked up the order, and release the order without obtaining the required

credit application".

Plaintiff fails to assert that the order was placed by only one of the defendants, not

all of the defendants.  (Greg Crawford TR p.33, line 21 – 22)  The order was placed by

the defendant who had the authority to place the order.  The evidence was uncontroverted

that this defendant placed the order with the belief that the order would bring a gross

profit for the company, and with the belief that there would be a continuing business relationship with this customer. (<u>Greg Crawford TR p.35, line 19 - p.36; line 8, p.42, line 19 – 21</u>)

The plaintiff asserts that all of the defendants had the authority to price the product. The evidence was uncontroverted that the pricing of the product was only by one of the defendants. There was no evidence that any of the other defendants knew that the order had been placed or had anything to do with the pricing of the order at the time it was placed.

Further, the evidence clearly showed that the order itself did not cause a problem for the plaintiff. The placing of the order and the pricing of the order merely gave business to the plaintiff , for which the plaintiff, incurred a gross profit, therefore, no harm was incurred to the plaintiff by the placing and pricing of this order. (<u>Ross Surratt TR p.101, line 20 – 21; p.104, line 6 – 8</u>)

The product was released "to the billing department to issue an invoice". The defendant, who released the product, testified that this process was nothing more than going into the computer and notifying the billing clerk that the product had been picked up. He did this on a regular basis for all products that were picked up by the customer or products for which delivery had been secured to the customer. This was a general course of his employment and this was the way the company knew to send out invoices and to receive payment for their orders that had been delivered. (<u>Eric Miller TR 9/17/08, p.8, line 2 – 17</u>) There was no testimony, nor evidence, that the releasing of this order for generation of an invoice caused any problems for plaintiff. Further, there is no evidence

that any of the defendants profited, in any way, because of the release of this order for an invoice.

Set out in plaintiff's brief, is the statement that the release of the product without the signature of the person who picked up the order was an issue at trial. However, this was never raised as an issue at trial, nor was there any evidence or testimony regarding this being a problem or a breach of fiduciary duty by any of the persons. The warehouse manager was not a defendant at the trial of this action. None of the other defendants herein worked in the warehouse, nor would they have been in a position to seek the signature of a person picking up an order from the warehouse.

Plaintiff further contends that Eric Miller made a statement to Rob Chase that "we're all in this together." However, Eric Miller testified that this statement was not made to Rob Chase. Eric Miller stated that he merely told Rob Chase that he was leaving and that he was leaving to go to work with the other defendants. (Eric Miller TR 9/17/08 p.13, line 2 – 6)

There was no testimony or evidence as to what this alleged statement was to mean. There was no evidence as to what "all in this together" related to. The only evidence was that Eric Miller told Rob Chase he was leaving and that he was going to work with the other two defendants Greg Crawford and Todd Robinson. At no time was any evidence admitted or any testimony admitted from any persons that Eric Miller, Greg Crawford, and Todd Robinson were all engaged in "a concerted effort to hurt Fastenal's business". The testimony clearly set out that each defendant had his own separate reason for leaving. Greg Crawford's testimony, which was uncontroverted by any testimony or evidence of the plaintiff ,was that he had been wanting to leave for several months, that

he had been looking for another position for several months, he was unhappy, his pay was being cut and his territory was being cut, which would cut his pay even further. (Greg Crawford TR p.14, line 1 – 8)

Todd Robinson did not make a decision to leave and go to work with a competitor until such time as he was advised by Rob Chase that he would not be considered for the store manager position that was being vacated by Greg Crawford. This testimony was supported by plaintiff's own witness Rob Chase, Rob Chase stated that Todd Robinson contacted him and inquired about the store manager position and that it was after Rob Chase advised him that he would bring another person in from another store to run this branch, that Todd Robinson informed him he would not be staying with the company. (Rob Chase TR p. 57, line 5 – 12)

Eric Miller testified that his decision to leave was not made until he was informed by Rob Chase that Greg Crawford and Todd Robinson had left the company. It was at that time that Eric Miller stated that he would be going with them and Eric Miller decided to leave the company and leave his employment. It was at that time that Rob Chase requested Eric leave the building. (Eric Miller TR 9/17/08 p.13, line 2 – 16; p.11, line 16 – p.12, line 7)

There was no testimony or evidence presented that any of these defendants profited or benefited from the order that was placed several weeks earlier by Greg Crawford and which was subject matter of this action. However, plaintiff contends that this order was a "start up order for the business of Tristate Industrial Supply". The evidence was clear that Tristate Industrial Supply, prior to receiving the products from this order, had more than 2/3 of its stock inventory already in place. It had over

$100,000.00 of inventory from Fred Bruner and the previously acquired S&K Supply inventory.

It was further evidenced by the invoices put into place by defendant Troy Bruner, on behalf of Tristate Industrial Supply, that the total amount of products received from Fastenal could have been purchased from three other distributers for a lesser cost. (defendants exhibits no's. 4, 5, &6 )

Plaintiff's contention that this sale would have never been made was clearly controverted by the testimony of every witness that took the stand. Witnesses testified that sales to competitors were made on a daily basis from several branches, including the Ashland branch of Fastenal, Inc.. (Greg Crawford TR p. 46, line 21 – p.48, line 12) That sales to competitors were made below the margin of profit that was set out on this particular invoice. (Greg Crawford TR p.48, line 13 – 15) The witnesses further agreed that in order to determine the profit margin, the testimony of all of the witnesses was that they took into consideration the size of the order, the customer that was placing the order, the ease of the transaction and the ability for future business. (Greg Crawford TR p.44, line 15 – p.45, line 14; p.43, line 4 – 7)

There was absolutely no testimony that any of these defendants did anything more than work toward the best interest of Fastenal and its employees during the period of time that they were employed at Fastenal. Plaintiffs own witnesses testified that each of these employees were good employees, that they ran the Ashland branch of Fastenal in a profitable manner, and that they had no complaints with any of the employees during the period of time that they were employed.

The plaintiff relies upon testimony of Shane Collingsworth, a fellow Fastenal employee, and his testimony that he believed the defendants were planning to leave Fastenal and start their own business for several months. However, the weight of the evidence is clearly the opposite of that. Shane Collingsworth could not give any specifics as to the basis of his belief that these employees were wanting to leave other than the fact that they were generally disgruntled. Being generally disgruntled is not sufficient to find a breach of fiduciary duty. The defendants herein are entitled to judgment as a Matter of Law on the issue of Breach of Fiduciary Duty.

**C.   Civil Conspiracy**

The plaintiff in its response agrees that the definition of a civil conspiracy is " two or more persons enter into a plan or partnership to accomplish an illegal act" <u>Kentucky Speedway,LLC. V. National Association of Stockcar Racing, Inc., 410F.Supp.2d 592(E.D. Ky 2006)</u>. The plaintiff, however, cannot point to a plan or a partnership of any of the defendants herein to accomplish an illegal act. As set out in defendants' brief in support of its motion, there was no plan, there was no agreement, there is no partnership associated by any of the defendants, wherein a civil conspiracy could be found.

The testimony was clear that none of these defendants had any relationship with Stewart Ashton, Jr. or New River Energy prior to the initiation of this law suit. In fact, the testimony was clear from Stewart Ashton, as well as all of the defendants, that they had never met Stewart Ashton prior to this lawsuit. (<u>Stewart Ashton TR p.6, line 17 – p.7, line 23</u>) The order that was placed, that is subject of this lawsuit, was entered by an agreement between Chris Bruner and Stewart Ashton. Chris Bruner is not a defendant to

this lawsuit.  Stewart Ashton's only agreement was that he would provide the funds to allow Chris's brother and father to place an order with Fastenal.  He would purchase the order and to give them additional time to pay him for the order.  (<u>Stewart Ashton TR p.8, line 1 – 19</u>)  There is nothing illegal about this agreement. Nor is there any plan or partnership between Stewart Ashton and the other defendants herein.

The defendants painstakingly set out their argument on this issue in their brief in support of their Motion for Summary Judgment and will not bore the Court with a reiteration of those facts.

The defendants, each of them, are entitled to Judgment as a Matter on Law of this issue as the jury had to determine from each defendant whether or not they were involved in civil conspiracy.  There is no evidence to support a civil conspiracy or plan to accomplish an illegal act.  There is no testimony to support any plan between Stewart Ashton, Greg Crawford, Todd Robinson, and Eric Miller.  There is also no illegal act that had been performed, therefore no civil conspiracy can exist and no basis for the jury to award damages as a civil conspiracy.

**<u>The Tristate defendants did not waive their objection to the civil conspiracy instruction.</u>**

The jury charge held with Magistrate Adkins on August 15, 2008, was a charge to determine whether or not the jury instructions being presented to the Court contained the proper language and law of each alleged action.  The jury charge conference did not determine whether or not specific instructions should be given or whether or not they were proper under the law and under the evidence to be given.

At the time the jury instructions were being argued before the Court, the specific jury question arose as to whether or not it was proper to give an instruction on civil conspiracy. This was argued on behalf of the defendants by counsel for Stewart Ashton and New River Energy and by agreement of counsel of the other defendants as the Court clearly set Court it did not want to hear duplicate arguments. The Court further stated that "all objections would be reserved".

### D.  Fraud

Plaintiff makes several arguments in an attempt to support their allegations of fraud, however, their theories were never supported by any evidence.

The evidence clearly showed that an order was placed with Fastenal, Inc., by Troy Bruner. Troy told Fastenal, Inc. that the order would be purchased by New River Energy. The order was purchased by New River Energy. New River paid Fastenal for the invoice originally generated for the order. New River had the items picked up and they were stored at the building of Tristate. The items remained at this facility until Tristate paid New River for the items, after which Tristate placed the items in their inventory and resold them.

Fastenal claims fraud was committed because the items ultimately went to Tristate. However, nothing fraudulent occurred in this transaction. Fastenal is in the business of selling bolts and fasteners. The evidence was clear that they sell to customers, many of which are competitors, on a daily basis. They do not seek from their customers information concerning the ultimate use of the items.

Fastenal seeks to have the Court believe fraud was committed because the regional manager was not informed of the order. However, it was clear that Fastenal,

Inc., through its branch manager was fully informed of the order. He acted within his authority and his customary daily activities in taking the order.

The evidence was further clear that the branch manager informed his district manager of the order and that the order was taken at a very low margin. (Rob Chase TR p.46, line 2 – 7) The district manager chose to look no further at the order and chose not to ask any further questions. (Rob Chase p.46, line 11) The district manager was at the Ashland branch the following day and chose not to look into the order. He knew the branch manager was leaving his employment that day, he spent the entire day with the branch manager and chose not to inquire further about the order. The district manager further chose not to look at the margins of the order.

As was previously set out in defendants Motion and Brief, Fastenal, Inc. had full opportunity to investigate this order and chose not to do so. They cannot now come and claim they were harmed by fraudulent acts. (Sanford Construction Co. v. F & H Contractors, Inc., 443 S.W.2d 227 (KY 1969)

The true facts came out at trial. Fastenal, Inc. had no evidence of fraudulent acts committed by any of the defendants. They have merely concocted theories of fraud based upon their own assertions of what "could have been happening".

Fraud, however, must be proven by clear and convincing evidence. It cannot be sustained by arguendo of counsel. The proof just doesn't exist and was not presented at trial.

Plaintiff argues that it "would never have approved the sale had it known, all the facts". However, the evidence was clear that it routinely made sales to competitors. (Greg Crawford TR p.46, line 21 – 48, line 12) The evidence showed it routinely

changed the profit margins on orders to "get the sale".  The branch managers were given authority to run the branch "as if it was their own store".  Ross Surratt and Rob Chase both testified that they permitted Greg Crawford the ability to run the Ashland branch and make decisions as if he owned the store.  They had never declined a sale he made at that store and did not oversee his daily operations.  (Rob Chase TR p.31, line 19 – 25)

Plaintiff's continue to argue that "these former employees placed an order for themselves,".  However, once again plaintiff  ignores the evidence admitted.  The evidence was clear that none of these defendants had any ownership in Tristate Industrial Supply until March, 2006.  None of these defendants were employed by Tristate or its predecessor S&K Supply, until after the order was picked up.  There was no evidence that connected any of the defendants to Tristate Industrial Supply prior to their departure from Fastenal.  (Greg Crawford TR p.104, line 6 – 20)  This again was merely a "theory" of plaintiff not supported by any evidence.

Plaintiff again tries to support its brief with testimony of Rob Chase that alleges Eric Miller told him "we're all in this together".  Eric Miller disputed making this statement and no testimony or evidence was ever introduced to prove what the alleged statement supposedly referred to.  Eric Miller testified that he did tell Rob Chase he was leaving and was going to work at Tristate with the other two defendants, however, nothing about that leads to fraud.

The bottom line is that plaintiff failed to prove their allegations of fraud.  They failed to meet the heightened standard of clear and convincing evidence.  They had theories and arguments, but this Court is required to make decisions based upon evidence and the evidence was nonexistent.

### E.  Punitive Damages

The jury clearly found that plaintiff sustained no injury as a result of its allegations of fraud.  This leaves the Court with the obligation of looking at the evidence or lack thereof, to determine if the factors set out in <u>BMW v. Gore,</u> 517 US 559, 116 S.CT 1589 (1996) were sufficiently met to allow an award for punitive damages.  It unmistakenly clear, in our case in chief, that these factors were not met.

It was clear by the evidence that the plaintiff was not a financially vulnerable "victim".  The testimony Ross Surratt stated that the company earned $2.2 billion and that his region, which included the Ashland branch, was up this year from its previous profits of $140,000,000.00  Fastenal opened two additional branches in the same territory previously serviced by the Ashland branch and all three locations were still doing well despite dividing the territory.  (<u>Ross Surratt TR p.92, line 3 – 16; p.109, line 24; p.110, line 5</u>)

Plaintiff alleges it lost business as a result of Tristate Industrial Supply, however, they did not present any evidence to state what, if any, customers or business it lost as a result of any actions of the defendants.  Plaintiff acknowledges that it split the territory of the Ashland branch and evidence was presented that the profits of a branch declines substantially after a territory split.  Plaintiff's arguments of financial vulnerability of a specific branch is not supported by evidence, nor is that the inquiry the Court is to make pursuant to <u>Gore, Id.</u>.  The plaintiff simply cannot meet the criteria of financial vulnerability.

### F.  Trade Secrets

Plaintiff acknowledges that Courts traditionally distinguish trade secrets as

that which is "discoverable only through extraordinary efforts and through many years expenditure of time and money" as opposed to information that "may be obtained through such legitimate channels as telephone books, the internet, or by calling local businesses."  ATC Distribution Group, Inc. v. Whatever it Takes Transmissions and Parts, Inc., 402 F. 3d 700, 714 (6th Circuit 2005).

Plaintiff asserted at trial that customer information and pricing were trade secrets that have been misappropriated.  However, no evidence was introduced to prove any customer information was taken from Fastenal, Inc..  (Rob Chase TR p.125, line 6 – p.126, line 7)  Only plaintiff's assertion that usage reports were run by employees at Ashland in December, 2005 (not days prior to the departure as asserted in plaintiff's brief.  The testimony was that these were run in "December".  (Rob Chase TR p.21, line 22 – p.22, line 3;  p.146, line 4 – 12)  Plaintiff  acknowledges that  no documents were removed from Fastenal, Inc. and that they do not know who ran the reports, the purpose of the reports or if any of the information on the reports was disseminated to persons outside the branch.

Further, plaintiff's and defendant's both testified that this area serviced by Fastenal's Ashland branch is a localized area wherein the customer base is fixed and generally known by all persons in the business.  Fred and Troy Bruner had been in the same business for over 30 years.  They knew the general customer base in this area.

Further, Fastenal, Inc. contends that their pricing structure was a trade secret. However, the testimony from all witnesses was that the pricing structure changed per customer, per order and was changed in Fastenal's computer on a regular basis.  Ross Surratt from Fastenal, Inc. testified that the base price changed regularly pursuant to an

average cost generated by Fastenal, Inc..  This average cost was derived by averaging three or more invoices for the same product.  (Testimony was by Rob Chase, TR p.121, line 1; p.124, line 12; p.118, line 17; p.119, line 6; p.120, line 12 – 20; p.123, line 11 – 25)

It was clearly testified that there is no way anyone could know Fastenal's average cost and profit margin without looking to the computer each time they quoted a sale.  No basis for a belief that defendants had any pricing information or misappropriated same.

Plaintiff  relies  upon Stratienko v. Cordis Corporation, 429 F.3d 592 (6th Circuit 2005) for their contention that misappropriation of trade secrets can rarely be proven by direct evidence and that circumstantial evidence can be used.

Plaintiff believes that a mere assertion that because TriState's books show business from companies that also do or did business with Fastenal, Inc, that this was sufficient to prove a misappropriation of trade secrets.  This, however, does not rise to the level of circumstantial evidence that would permit a jury to render a decision in favor of plaintiff for misappropriation of  a trade secret.

Finally, plaintiff asserts that Tristate Industrial Supply's pricing structure was similar to Fastenal, Inc.'s.  The testimony, however, was just the opposite of this argument.  The testimony was clear that Tristate Industrial Supply did not have the sophisticated and complicated bookkeeping system that Fastenal, Inc. employs.  TriState is a small business and their pricing depends upon what they must pay for the items and what profit margin they need to generate to operate their business.

Defendants' testimony as to the types of things they look for in determining customers they want to target or extend credit, was general knowledge they have obtained

by working in the field.  They testified that they are familiar with the general area, they have lived and worked in the area all of their lives, they ran credit checks and contacted references.  This is not trade secret misappropriation but good general business practice.

### G.  Breach of Confidentiality Agreement

Plaintiff attempts to use the Confidentiality and System Usage Agreement as a non-compete contract.  It basically argues that because employees had access to information by and through their employment with Fastenal, Inc., that the employees can never work for a competitor.  Fastenal's argument is that "it would be impossible not to use the information when performing the same jobs at Tristate that these defendants had performed at Fastenal."

However, such an argument does not rise to the level of evidence that Greg Crawford used or disseminated confidential information.  Public policy would dictate that any agreement which basically prevented a person from working in a competing business without certain limits would not be enforced.  Accordingly, plaintiff's argument would fail on that issue alone.

The main objective focused on here, and clearly acknowledged in plaintiff's brief and case in chief, is that plaintiff did not and could not give this Court any evidence of any confidential information that was used or distributed by Greg Crawford.

Further, it was testified that no one from Fastenal, Inc. ever discussed the Confidentiality Agreement with the employees.  Employees were not permitted to have it reviewed and explained by an attorney.  (Greg Crawford TR 9/17/08 p.73, line 6 – 14) Greg Crawford testified his understanding of the agreement, as set out specifically in the agreement, was that he was to return all items to Fastenal, Inc..  (Greg Crawford TR

9/19/08 p.3, line 22 – p.4, line 11)  Fastenal, Inc. acknowledges that Greg Crawford did not remove any items from their premises.  (Rob Chase TR p.125, line 6 – 14)

Finally, Fastenal, Inc. could not establish what, if any, information Greg Crawford had that was confidential.  Fastenal, Inc. could not offer anything other than conjecture and theory that any such evidence was ever used or disseminated by Greg Crawford in a manner that would breach the Confidentiality Agreement.  (Ross Surratt TR p.122, line 6 – 21)

As set out hereinbefore, general knowledge of the business gained through experience is not information that is protected.  Employees are permitted to use this general knowledge in furtherance of their employment.

**H.  Conversion**

Fastenal, Inc. argues that the goods purchased by New River Energy and resold to Tristate Industrial Supply were converted by the defendants.  However, it was clear that Fastenal, Inc. was in the business of selling goods.  They sold these goods.  They generated an invoice for these goods.  They realized a gross profit from the sale of these goods.  All of this was set out in clear evidence to the Jury.

Further, evidence established that Fastenal, Inc. routinely sold to competitors.  They sold at varying profit margins.

Fastenal,Inc. sold these products and these products were ultimately resold on two subsequent occasions.  Defendants did not have any ownership interest in New River Energy nor Tristate Industrial Supply at the time this business transaction was conducted.  These defendants had no relationship at all with either business at the time of this transaction.

Fastenal, Inc. did not complain of the transaction until after the defendants left their employment. On at least two occasions after Fastenal, Inc. made complaints about the order, the goods were offered back to them. Fastenal, Inc. refused the return of the goods. (Ross Surrat TR p.41, line 3 – 46)

Fastenal, Inc. was offered additional money for the goods, and they refused this offer, as well.

Fastenal, Inc. made it extremely clear that they were not interested in the return of the goods, nor additional money for the goods. Fastenal, Inc. sought to impose non-compete contracts against defendants and used this assertion as a means to that end. These defendants never signed non-compete contracts and never agreed to any non-compete.

The goods were not converted to personal use. The goods were properly sold to New River Energy and subsequently to Tristate Industrial Supply. Only after several attempts to return the goods, and after payment, in full, of the original invoice generated for the goods were the goods, placed into the general inventory of Tristate Industrial Supply and resold.

Further, plaintiff readily admits that the measure of damages on such a claim is the value of the property at the time of the conversion. State Automobile Mutual Insurance Company v. Chrysler Credit Corporation, 792 S.W. 2d 626, 628(Ky App 1990). Plaintiff provided no proof of the value of goods, nor the "date" of the alleged conversion.

Defendants could not have converted the property for their own use. The products were sold to businesses that the evidence clearly showed the defendants had no

connection with at the time of the sale.  After that point, the goods were not owned by Fastenal, Inc..

Fastenal, Inc. waived any claim to ownership of the goods when they refused to accept the return of the goods.  Fastenal, Inc. generated an invoice, through their billing department, not through any of the defendants.  This invoice was paid by the purchaser of the goods.  There is no evidence to support a claim for conversion.

Again, all Fastenal, Inc. had is a theory.  This theory was not supported by the actual proof.

### **New Trial and/or Remittitur**

It is clear that this jury reached a seriously erroneous result, as that is defined in <u>Mitchell v. Boelcke</u>, 440 F.3d 300 (6th Circuit 2006).  As set out herein and in defendants' motion and supporting brief, the verdict was against the weight of the evidence and the damages were extremely excessive.

Plaintiff's was further permitted to offer into evidence lists of proposed damages that were never properly founded in evidence.  Plaintiff admitted the damages claimed were not derived from any information of lost sales in their record.  They merely listed from defendants customer information all sales they "believe" they lost because they had mutual customers.

Plaintiff offers no evidence from these customers that they were improperly contacted by defendants, that confidential information was used to make these sales, that any items they claim were converted were sold to these customers or any other evidence to connect these figures to their allegations of wrong doing.

The jury was clearly motivated by passion and not by the evidence presented. This is the exact type verdict that renders the Court obligated to set the matter for a new trial, or, in the alternative, remit the verdict to be reasonable in conjunction with any compensatory loss supported by the evidence.

**<u>Ratification</u>**

Plaintiff's final argument asserts that "even if the Court determines that the parties did not reach an agreement on Friday, January 6, 2006, then this Court must still find breach of that agreement because the defendants ratified the agreement". This argument is so extremely absurd, it really bears little thought to be dispensed.

It is clear that there was no agreement reached on Friday, January 6, 2006. There was screaming, yelling and demanding from an adamantly irate Ross Surratt. There was no discussion between the parties of any specific agreement. There were no specific terms of an agreement set out. In fact, the only person on the phone listening to the tirade of Ross Surratt was Greg Crawford. Further, the plaintiff admits that the document offered into evidence,that was purportedly drawn up the weekend following the outburst, did not set out the same items that were demanded on Friday night by Ross Surratt. The plaintiffs also admitted they contacted another of the defendants on Saturday to try to persuade him to agree to the demands.

Clearly, there was never a meeting of the minds as to any agreement or contract. Now, plaintiff claims, if there was not a contract or agreement on that night, well defendants must have ratified one later, because, the defendants were not prosecuted with criminal charges, and benefitted from not being prosecuted.

The defendants were not prosecuted because the police were advised that this was not a criminal action, but rather a civil action and they did not go further. The police made this determination prior to the conversation of Ross Surratt and Greg Crawford being concluded. The evidence was clear that before the conclusion of the conversation, officers told Todd Robinson he could leave. Officers also told Eric Miller this was not a criminal action, but a civil action. (<u>Eric Miller TR 9/17/08, p.37, line 2 – 20; Todd Robinson TR p.17, line 9 – p.18, line 4</u>)

Plaintiff's allegations that they agreed to drop criminal charges is ridiculous, and their further assertion that they could not reinstitute the charges, supports the fact that the police determined there had been no criminal activity and refused to be involved in plaintiff's attempts to coerce an agreement from the defendants.

Defendants never made an agreement with plaintiff. Defendants never saw the written document offered into evidence by plaintiff until over a year later, when it suddenly appeared in discovery. Defendants could not ratify an "agreement" they knew nothing about. (<u>Rob Chase TR p.175, line 5 – 11</u>)

Plaintiff asserts that because the defendants were not prosecuted this amounted to a ratification of an agreement by defendants. Defendants did nothing to give this Court or the jury any reason to believe they ratified an agreement. This argument was never presented at trial. No evidence to support such an agreement was presented and none exists to support it now.

Finally, plaintiff is still attempting to have this Court draft a non-compete contract and enforce it against these defendants. Plaintiff argues that even if the Court finds the

verdict on the breach of the settlement agreement should not stand, the Court could "blue pencil" an agreement and put in the terms it wants.

The Court cannot just, on its own, determine an agreement or contract between the parties should exist and decide the terms of the contract. Plaintiff is asking the Court to do what plaintiff has been trying to do for two years, make up a fictitious agreement and enforce it.

The cases cited by plaintiff merely state that if an agreement was signed, but was found to be too broad, the Court can narrow the time period and territorial limits. Hammons v. Big Sandy Claims Service, Inc. 576 SW2d 313 (KY App. 1978). However, in this action, there was never an agreement. The defendants all testified that they gave up promotions and raises so as not to sign a non-compete. The defendants testified this was a very important issue with them and they did not make any agreements not to compete with plaintiff.

This was further evidenced by the fact that plaintiff did not have a signed a non-compete contract for any of the defendants. Plaintiff did not have any conversations with any defendants other than Greg Crawford where the specific demand for a non-compete was ever made. Plaintiff admits that the documents which appeared a year later, were never submitted to defendants for review, these documents contain different terms and additional terms than what was demanded. (Rob Chase TR p.175, line 5 – 11) These documents also are different from the general documents plaintiff forces upon its employees.

The evidence was abundantly clear, there was never a settlement agreement reached. The verdict of the jury on this issue must be set aside.

WHEREFORE, defendants herein respectfully pray this Court set aside the jury's

verdict on the issues presented and enter Judgment in their favor.

Respectfully submitted,

 /s/Sharon E. Rowsey
SHARON E. ROWSEY
Attorney for Defendant's Greg Crawford, Todd Robinson,
 Eric Miller, and Tri-State Industrial Supply, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2008, I electronically filed the foregoing
with the Clerk of Courts by using CM/ECF system, which will send notice of electronic
filing to the following:

Hon. Leigh Latherow
VanAntwerp, Monge, Jones, Edwards
& McCann
1544 Winchester Ave., fifth floor
Ashland, KY 41101
llatherow@vmje.com

Hon, Michael Endicott
225 Court Street
Paintsville, KY 41240
endicotm@bellsouth.net

  /s/Sharon E. Rowsey